ROBERT F. KOEHLER, JR.  SBN 80278
HIBBITT TARBELL & KOEHLER
331 "J" Street, Suite 200
Sacramento, CA 95814-2220
916-446-7858;
email:  HTKbob@sbcglobal.net

Attorney for Sarah R. Novo, Plaintiff,

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SARAH R. NOVO,<br>            Plaintiff,<br><br>      v.<br><br>CITY OF SACRAMENTO, ANGELIQUE<br>ASHBY,<br>            Defendants. | Case No. 2:13-CV-<br><br>COMPLAINT FOR DAMAGES,<br>DECLARATORY RELIEF (FAMILY<br>MEDICAL LEAVE ACT AND<br>SUPPLEMENTARY STATE CLAIMS)<br><br><u>DEMAND FOR TRIAL BY JURY</u><br><br>Date:<br>Time:<br>Courtroom:<br><br>Complt Filed:<br>Trial Date: |

Plaintiff, Sarah R. Novo, alleges:

NATURE OF THE ACTION

1.     Sarah R. Novo (hereafter "plaintiff) brings this action for violation of her rights under the Family Medical Leave Act and supplementary state claims.  These claims for injunctive relief and damages arise under 29 U.S.C. § 2601 *et seq.,* 29 CFR § 825.100 *et seq.,* and CFRA, Cal. Gov't Code § 12945.1 *et seq.*

JURISDICTION AND VENUE

2.      Jurisdiction arises under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on California statutory and common law because the state claims arise from the same nucleus of operative facts as the federal claims.

3.      Venue is within the Eastern District of California pursuant to 28 U.S.C. § 1391(b) as the claims arose in this judicial district.

4.      On March 11, 2013, plaintiff filed a request in writing to the California Department of Fair Employment and Housing for a "Right to Sue" letter against the defendants for Discrimination and Retaliation in her employment pertinent to denial of FMLA and CFTA and leave rights for her medical condition and care for her family, discrimination and retaliation for requesting her leave rights, denial of equal pay, and accommodation in employment for her [temporary] disability.  Plaintiff attaches her filed request to her complaint and will file an amended complaint [attaching her right to sue letter] when plaintiff receives the right to sue letter.

PARTIES

5.      Defendant City of Sacramento (hereafter "City") is a municipal corporation and governmental subdivision of and within the State of California.

6.      Defendant Angelique Ashby (hereafter "Ashby") is a City Councilwoman, who accepted elected office November 23, 2010.

7.      Unless otherwise denoted, City and Ashby are hereafter collectively denominated as "defendants."

8.      On November 23, 2010 defendants hired plaintiff from its [City] eligible reemployment list of [previously] "laid-off" workers.

9.      Plaintiff is a resident and citizen of the State of California.  At all times relevant and material herein she was employed by defendants.

GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff was earlier employed for eight (8) years in various capacities by the City beginning about September, 2002.  She was promoted to Animal Control Officer and worked in that capacity for four years.  In 2006, plaintiff was promoted to Code Enforcement Officer and worked in that capacity until laid-off because of City budget restraints in July 2010.  At the time of plaintiff's lay-off from City employment, plaintiff was vested with all City employment benefits including the vested right of return to employment.  In September, 2010 she was invited to return to her position as Code Enforcement Officer effective October 1, 2010 because her position was again funded by the City.  *In toto*, plaintiff was employed by the City for over nine and one-half (9½) years.

11.     At the time of the City inviting plaintiff to return to her position as Code Enforcement Officer, Ashby made a City employment offer to plaintiff to be her "District Director" for Ashby's political district within Sacramento, to be effective November 23, 2010.  Plaintiff responded to Ashby that she would have to earn at least what she made as a Code Enforcement Officer, $63,000.00 yearly.  Ashby responded that was not a problem as plaintiff would be making more than that as her District Director.

12.     Ashby directed plaintiff to not accept the City's offer to return plaintiff to her former position as Code Enforcement Officer, as it would [according to Ashby]

create potential employment problems within the City.  Ashby did not explain [at the time] to plaintiff that in accepting her [Ashby's] direction to not accept re-employment with the City as a Code Enforcement Officer, plaintiff [later learned] would be giving up her vested right to return to City employment.  Defendants should have directed plaintiff to return to her Code Enforcement position and then once Ashby was sworn-in as a City Councilwoman on November 23, 2010, plaintiff could then accept Ashby's offer of employment and transfer to Ashby's employ as her District Director—while retaining plaintiff's vested right of return to Code Enforcement.

13.     Ashby presented to plaintiff that her tendered management position was a promotion in City employment that plaintiff would do well to accept.  Ashby strategically emphasized to plaintiff that by accepting her offer, plaintiff's long term career opportunities within City's employment would be greatly enhanced both promotionally and financially; simply, Ashby presented her offer as a great career enhancement opportunity for plaintiff.  Plaintiff then investigated the pay scale for the "District Director" position within City employment and learned that it started at $68,000.00 yearly and was a management position within City employment providing plaintiff future upward mobility in City management ranks.

14.     Ashby presented that in consideration of this management career enhancement offer to plaintiff, she expected plaintiff [in exchange] to work effectively full-time (without "pay") in October-November until plaintiff's employment became official on November 23, 2010.  Plaintiff found this to be acceptable because the difference in pay between her former position (as Code Enforcement Officer) and her new position (District Director [under Ashby]) made up the immediate one month

without compensation and provided long term management opportunities for greater career/compensation rewards.  Relying on Ashby's representations, plaintiff then accepted Ashby's position of District Director and began helping Ashby get ready to take office as a new City Councilwoman.

15.     But for Ashby's representations that plaintiff's employment career with the City would be enhanced in upward management mobility and financial compensation, that plaintiff would be Ashby's "District Director," that plaintiff would begin earning at least $68,000.00 yearly, that plaintiff's employment benefits with the City would continue to be enhanced—but for these representations, plaintiff would not have accepted Ashby's offer; instead, plaintiff would have accepted the City's offer to return to her former position as a Code Enforcement Officer, a protected position.

16.     After plaintiff orally accepted the position offered by Ashby, she notified the City's Code Enforcement Office that she was not returning to her former position, but instead was accepting the offer presented by Ashby for return to City employment.  At the time, the City did not notify plaintiff that in declining its offer to return her to her former Code Enforcement position, plaintiff was giving-up her vested re-employment rights in City employment [by accepting Ashby's offer in its stead].

17.     Notwithstanding Ashby's October representations of terms of employment to plaintiff [*ante*], on November 23, 2010 Ashby did not hire plaintiff as her "District Director" as earlier promised; instead, without prior notice to plaintiff, Ashby hired plaintiff to a different City position, to wit:  "Executive Assistant."  See Exhibit "A" attached hereto and incorporated herein as if fully set forth.  When

plaintiff brought this to the attention of Ashby, she flippantly told plaintiff the job was the same, just an *apparent* different title.  Plaintiff was surprised by this because Ashby designated plaintiff as her "Director of Constituent Affairs," a title widely known to be the "District Director" position.

18.     Plaintiff further learned at the time of hiring that the *sub nomine* Executive Assistant position paid less and provided fewer benefits than that for District Director.  The District Director position is a "management position;" the Executive Assistant position is a rank/file "employee" position that reports in a "secretarial" capacity to the District Director.  The District Director position is a "management" position that "manages workload, supervises secretary and interns [a]ttends outside meetings during both workday and evenings, in the community including Neighborhood Service Area meetings, neighborhood association meetings, special meetings on urgent issues in the community, and others of the variable nature; represents Council Member at a wide variety of meetings both during the work day and evening, as required."  The District Director also "responds to constituent inquiries; attends outside meetings as self, and represents Council Member at meetings."  *The foregoing are the duties that plaintiff performed for defendants.*

19.     The Executive Assistant position reports to the District Director, "... provides direct clerical and administrative support to ... and assists District Directors as required."  The Executive Assistant "[t]akes and transcribes dictation from rough draft or shorthand notes; composes routine correspondence not requiring the council members personal attention; receives, opens, reviews, and distributes incoming mail, receives and processes invoices and maintains accounts

payable." *Plaintiff was <u>not</u> asked to, and did not perform the duties of an Executive Assistant.*

20.     Plaintiff met the qualifications required by the City for appointment to the District Director position that she was promised; to the contrary, plaintiff did not meet the City's qualifications for appointment to the Executive Assistant position that she unwittingly found she was *forced* to accept.  Plaintiff did not learn of this change [District Director to Executive Assistant] from Ashby; plaintiff first learned of Ashby's change from the HR (Human Resources) representative while processing her employment papers on the first day of plaintiff becoming officially employed by Ashby.  Plaintiff had already turned down the position at Code Enforcement, so unless plaintiff accepted the substitute position of Executive Assistant as offered by Ashby, plaintiff would have found herself unemployed.

21.     Plaintiff was hired at the top of the Executive Assistant pay scale only to later learn that this pay level was approximate to the bottom of the pay scale for the "District Director" position.  Notwithstanding, Ashby directed plaintiff to report directly to her [Ashby]—rather than reporting to the person that she hired as the District Director.  In other words, Ashby unofficially (in fact) assigned plaintiff the position of District Director "out of her classification" [as Executive Assistant].

22.     Ashby then filled the position of "District Director" with another individual who did not meet the City's qualifications for the position.  Ashby created the unofficial title of "Director of Public Policy" (without responsibility for "constituent affairs") for this individual.  In sum, Ashby *subreptio* [1]/ assigned

---

[1] "*Subreptio*" (L), to obtain by false pretenses the largest of the City's employment classification for Ashby's budgetary benefit, to the detriment of a City employee—a breach of the City's

plaintiff the District Director position, *subreptio* assigned plaintiff the duties of this position, but hired plaintiff to a lesser position [Executive Assistant] with less pay and benefits—yet in fact Ashby demanded that plaintiff perform the duties of the District Director position, be available twenty-four hours/seven days a week for Ashby's political activities while not paying plaintiff the required compensation package that the City designates for the District Director position.

23.     Plaintiff was forced to accede to this because Ashby insisted to plaintiff that she *was* the District Director and the extra hours plaintiff worked for Ashby were *de rigueur* for the position.  Ashby violated the City's written personnel standards by demanding that plaintiff [in her position as Executive Assistant] be available twenty-four hour/seven days a week—a description expressed in the District Director position, but clearly not set forth as a parameter of employment in the description of the Executive Assistant position.  Plaintiff more often than not worked (as District Director) a sixty-seventy hour work-week for Ashby's political agendas, duties that were not within the City's employment standards and for which plaintiff was not compensated because plaintiff held the employment position of Executive Assistant.

24.     Plaintiff worked as a *de facto* District Director for the defendants until March 19, 2012 when Ashby suspended plaintiff from defendants' employment without any prior notice whatsoever.  During plaintiff's employment in Ashby's office, Ashby was plaintiff's only supervisor who [Ashby] presented that she acted in the course and scope of the City's employment practices.  For the weeks preceding

---

standards for employment practices; that is, intentionally employing persons out of job classification to benefit of the City and to the detriment of the employee.

plaintiff's surprised suspension and immediately prior thereto, Ashby continually

advised plaintiff that her work performance was excellent, *viz.*:

[Text messaging:  SN: plaintiff; AA: Ashby]

*Jan. 19th, 2012 657pm* - Unprompted message from Angelique Ashby to Sarah Novo:     AA - "Just want to say thank you for working so hard. You are doing a great job!!!!"

SN - "All I can do is my best...I really appreciate you noticing and letting me know. Most people don't realize how important that is. Thank you for being great to work for and for the opportunity to make a difference."

AA - "We are a team!"

SN - "Yep!"

*Feb.2nd, 2012 850pm* - Unprompted message from Angelique Ashby to Sarah Novo:

AA - "Great job tonight. I am very proud of our team. Each of you is amazing and we are making a huge impact in our district because of you! Thank you for working hard and being the best team to ever serve this City."

*Feb. 10th, 2012 108pm* - Conversation between Angelique Ashby and Sarah Novo:

SN - "Just spoke with Ron 0 at code and he says that there have been no recent calls to the park and no record of code pulling the signs. I asked that he check w/the area officer and get back to me in the off chance that it wasn't logged. We shall see."

AA - Ok did you call Glenn? 135pm

SN - "Sure did. I told him I will keep poking around and will let him know if I hear anything."139pm

SN - "I found em. Haha" 143pm

SN - "Just called Glenn back and let him know...code took them and hadn't logged it yet. Code ofc perez is putting them back out where he got them from.
Woohoo success!

AA-"Great work!!!!"

*Feb. 13th, 2012 252pm* - Conversation between Angelique Ashby and Sarah Novo:

SN - "Can you think of any places that need N Factor fliers? Ive aready done coffee shops and cal fit."

AA- "I would ask Ed to have chamber members hang them up" 2:53pm

SN - "Sounds good...I gave some to natomas music school this AM too when I was at AIM. I left someon the counter at AIM too. Danielle asked for printing and I taked to Dan at a recent Natomas Chamber mixer. He said that he wanted to put his logo back on, so I brought them backin...then he changed his mind and I picked them back up today. He's a pretty cool guy. Heading to Fast signs now." 258

AA- "Great work Sarah, you are kicking ass."

*March 11th, 2012 111pm*- Unprompted message from Angelique Ashby to Sarah Novo, Michelle Kille and Brandon Black:

AA – [Begins by talking about her health and some recent tests done. She ends With] "...have a great Sunday - hope Michelle is doing great in her run, Sarah hope you are accomplishing lots..."

25.    During plaintiff's entire City employment history, plaintiff had not at anytime been subject to written or oral counseling for deficiencies in her employment functions.  To the contrary, plaintiff received multiple communications and formal employment performance reviews from her supervisors that her employment performance was above average if not exemplary.  At the time of plaintiff being laid-off from Code Enforcement, four City Council members wrote to Code Enforcement respecting her exemplary employment history.  Plaintiff also received a complimentary letter from a Captain in the Sacramento Police Department.

26.    This same employment history continued in plaintiff's performance as Director of Constituent Affairs [*sic*].  For example, plaintiff's exemplary performance was highlighted in the District Annual Report (2011): "The project is almost fully finished...I can truthfully say that it wouldn't have been accomplished without the

skills of Ms. Novo.  Her ability to pull various levels of government agencies together is nothing short of remarkable."  Annual Report (2011), page 12.  Similarly at page 14:  "Sarah went to great measures to help Phil get this [American River Bike Trail] problem fixed, and would talk to him regularly to update him about the progress. Whenever they would talk Phil would thank Sarah, and say how glad he was that she was there to help."

FIRST CLAIM FOR RELIEF

(Violation of the Family Medical Leave Act, 28 U.S.C. § 2611 *et seq*)

(Failure to Convey Family Medical Leave Act Information to Plaintiff)

27.   Plaintiff re-alleges and incorporates paragraphs 1 through 26.

28.   The City is an "employer" within the Family Medical Leave Act (hereafter "FMLA"), because the City employs over 50 employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4)(A); CFR §§ 825.104(a), 825.105.

29.   Ashby is also an "employer" within the FMLA.  See *Bonzai v. Shinseki*, 2012 U.S. Dist. Lexis 129440 (E.D. Cal., September, 2012) and *Sutton v. Derosia*, 2012 U.S. Dist. Lexis 147434 (E.D. Cal., October, 2012, citing *Haybarger v. Lawrence County et al* (January, 2012, 3rd Cir.), 667 F.3rd 408, 419.

30.   The "negative factor analysis" is to be applied to plaintiff's claims under the FMLA.  *Cf. McDonnell Douglas* "burden shifting analysis."  It is unlawful for an employer to "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions [termination]."  *Bachelder,* 259 F.3d 1112at 1122 (quoting 29 C.F.R. § 825.220(c).  "[I]f an employer uses an employee's taking of FMLA leave as a 'negative factor' in making 'adverse

employment decisions,'. . . the employer interferes with the employee's exercise of FMLA rights." *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1159 (E.D. Cal. 2009) (relying on *Bachelder v.Amercia west Airlines, Inc.,* (9th Cir., 2001), 259 F.3d 112, 1122-23).  See *Ruder v. Pequea Valley School Dist.* (E.D. PA, May, 2011), 790 F. Supp. 2nd 377, 394, employer failure to *advise* employee of right to FMLA leave is an "interference" of right to leave under the FMLA within the meaning of 29 U.S.C. § 2615(a)(1) [citation omitted].

31.   Plaintiff is an "employee" for purposes of the FMLA, because plaintiff worked for the defendants for more than 12 months; worked at least 1250 hours during the 12-month period immediately before the leave commenced. 29 U.S.C. § 2611(2)(A); 29 CFR §§ 825.110(b), 825.110(c).

32.   Plaintiff suffers from serious health conditions, including but not limited to headaches, nausea, and sinus problems that result in chronic fatigue and pain, as that term is defined in 29 U.S.C. § 2611(11).

33.   Plaintiff's FMLA medical leave was implicated because plaintiff needed to recover from, or seek treatment for her own serious health condition. 29 CFR § 825.112(a)(4). Plaintiff was denied reinstatement.

34.    Plaintiff's FMLA medical leave was also implicated because plaintiff needed to care for her spouse, son, daughter, who were suffering from documented exposure to toxic mold and medically documented injuries involving serious medical conditions.  29 U.S.C. 2612(a)(1)(C).  Her spouse's toxic mold symptomatology includes coughing, shortness of breath, and respiratory distress.  Plaintiff's daughter, Vanessa, had double ear infections, fever, coughing, chronic running nose (sinus), and breathing problems.  Plaintiff's second daughter, Angelina, had rashes

on her legs, headaches, stomach pains, and breathing issues.  Plaintiff's third

daughter, suffered headaches, stomach pains, vomiting, sinus issues, and breathing

problems that now required the use of an inhaler as needed.  Plaintiff's family had no

prior medical history of these issues.

> The Novo family is under my care for many serious medical conditions resulting from their exposure to a severely water damaged home found to have extremely elevated levels of total sport counts, Aspergillus/Penicillium and Chaetomium mold as well as Stachybotrys mold.  Personal items tested from the home have been found to be severely contaminated with mold and bacteria.  Based on these results, as well as the family's clinical history, I recommend they strictly avoid exposure to any materials that have been in contact with this home.

> Janette Hope, M.D., May 25, 2012, To Whom It May Concern.

> Nick Novo has been evaluated in our clinical practice.  He was first seen on March 6, 2012.  His last appointment was March 20, 2012.  He will also be seen March 27, 2012.  He is undergoing an extensive medical workup for shortness of breath, coughing and respiratory distress.

> I have requested that Mr. Novo be off work during this time to expedite the completion of his tests and evaluations.  At this time, his illness does not appear to be work related so I have asked that he have FMLA available for his medical evaluation and treatment.

> Travis A Miller, M.D., Letter, March 26, 2012, To Whom It May Concern

35.   Defendants learned of plaintiff's needs for FMLA leave beginning

December 14, 2011 when plaintiff presented and expressed to Ashby her [plaintiff's]

distress and feelings of ill for herself and her families sickly conditions proximate to

occupying a newly rented home on October 1, 2011.  Plaintiff, her husband, Nick,

her daughters Angelina (12), Victoria (10), and Vanessa (3) were sick with a raspy

coughs, running noses, high fevers.  Vanessa fever temperature was 103 and needed

the use of cold-packs put to her forehead and back of her neck.  Vanessa's nose was

running a lot and she had formed a red rash around her mouth and chapped lips

from wiping her nose constantly.  Nick had a high fever at 102, raspy cough,

vomiting, in addition to his runny nose.  Plaintiff shared all of this information with Ashby on December 14, 2011.

36.   Because plaintiff was scheduled for a ten day vacation beginning December 18, 2011, plaintiff and Ashby agreed that plaintiff would try to accommodate Ashby's employment demands for the next two days [Thursday and Friday] and then have her [plaintiff's] vacation as an opportunity for her to recover and care for her family.  Notwithstanding the foregoing, Ashby directed plaintiff to work [for Ashby as her representative] at a community district Santa Claus parade on the night of December 17, 2011 that was put-on by Ashby's office.  Ashby was aware December 17 was plaintiff's youngest daughter's fourth birthday and that her request was causing plaintiff to leave early from her daughter's birthday party, planned and supervised by plaintiff—and attended by extended family and friends. Plaintiff returned from vacation on December 29, 2011.

37.   On January 2, 2012, plaintiff's youngest daughter (Vanessa) again became a major focus for plaintiff because (although her health had improved while on vacation in Florida) her severe coughing again became prevalent and omnipresent associated with high fever [103], necessitating plaintiff requesting on January 5, 2012 her husband to pick-up their daughter early from school [after receiving notification of her sickly condition from (Vanessa's) school].  Plaintiff and her other family members became sickly, again, and with coughing issues and malaise— particularly her husband with fever conditions.

38.   At the same time, plaintiff and her husband and children's ill health again returned.  Plaintiff presented to Ashby as "sick," rundown [*sic*], and without her normal physical resources.  Then on January, 13, 2012 rain water began

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

intruding into plaintiff's residence, becoming a major problem for her and her family. Plaintiff's husband took time-off from his employment to tend to the water intrusion problem and his daughter's health needs.  Because of the close working relationship between plaintiff [as Ashby's *de facto* District Director] and Ashby, plaintiff shared this water intrusion information with her as well the continuing health problems of her family.

39.   On February 2, 2012, plaintiff and her husband discovered fungi growth [large mushrooms] in their master bath and black mold growth behind the dresser in the master bedroom.  See exhibits B & C attached hereto and incorporated herein as if fully set forth.  Because of Vanessa's continuing deterioration of health, plaintiff on February 3, 2012 took time-off [one day] from work to take her daughter to their health care provider who stated Vanessa's symptomatology was consistent with exposure to toxic mold.  Because of the seriousness of these events, plaintiff shared the pictures (exhibits B & C) of her residence burdened with the toxic mold with *Ashby and received her permission to take February 3, 2012 as sick leave upon Ashby understanding and appreciating the seriousness of plaintiff's circumstances, after plaintiff shared with Ashby the foregoing information.*

40.   From February 2, 2012 plaintiff and her husband began sleeping on couches in the living room until moving to a motel on February 10th, returning to sleep one night again on the couches on the night of February 14th.  On February 15th, plaintiff's husband took Vanessa to their health care provider because of severe ear aches.  Later the same day, her husband was placed on a breathing machine because of his coughing and inability to breathe.  The next day the mold tests results demonstrated the residence was unsafe for occupancy and plaintiff and her family

moved again to a motel until February 24th at which time plaintiff and her family relocated to her husband's parents' home.

41.   During these moves, plaintiff shared all the foregoing with Ashby, particularly that plaintiff and her family had to leave all of their personal possessions in their residence because of mold contamination.  On or about mid-February [*circa* February 15, 2012], Ashby took personal issue with Sarah about the necessity to abandon her personal property and how would she [plaintiff] be able to dress for the needs of her office and public functions on her [Ashby's] behalf.  Ashby had expressed on many occasions to plaintiff that she [as her District Director] was the face of Ashby's Office.  In addition to the above, from February 15th forward, plaintiff took on the duty of looking for a new, replacement residence for her family, personally viewing four potential homes on February 21st.  Plaintiff advised Ashby of her needs and requested if she could leave early at 3:00p.m. to view four potential new homes because of her families displacement.  At the time, plaintiff's husband was not well enough for this activity.

42.   On February 22, 2012, plaintiff awoke from the motel, the Hampton Inn at I-80 and Douglas Blvd, drove her two older daughters to Loomis (for school), then drove back to their contaminated residence to feed their horse and dog, then drove Vanessa to her school in Citrus Heights.  After dropping-off Vanessa at pre-school, plaintiff then drove downtown to work. Because of the cumulative stress (*ante*), once arriving at work plaintiff experienced heart palpitations, shortness of breath, fatigue/exhaustion, mental fog and an overwhelmed feeling from living in a hotel coupled with sick family, being displaced, and keeping up with a big job.  Plaintiff shared this information with Ashby and for a second-day-in-a-row, requested to

leave early at 3:00pm to look at additional potential new homes for her and her family—free of toxic mold.

43.    Cumulative and because of the foregoing circumstances set forth, plaintiff on March 6, 2012, presented to work as "sickly," and after plaintiff's discussions with Ashby (who was fully aware of plaintiff's and her family's homeless circumstances as set forth above, without personal possessions (contaminated with toxic mold), and serious illness issues from exposure to toxic mold, <u>Ashby directed plaintiff to take the rest of the week-off so that plaintiff could personally recover as well as attend to the serious medical and housing needs of her family</u>.  Ashby did not advise plaintiff she was potentially eligible for FMLA leave or sick leave.  Instead, <u>Ashby told plaintiff to put down this leave as "vacation" leave</u>.

44.    At no time did from December 14, 2011 through March 6, 2012 did defendants advise plaintiff of FMLA leave and/or that she may or did qualify for personal leave under FMLA and all rights and privileges appurtenant thereto, although each defendant was fully aware of their obligation to advise plaintiff of FMLA leave, having knowledge of the plaintiff's circumstances as herein above set forth in paragraphs one through 43 above—defendants FMLA [advisement] omissions were despite the fact that plaintiff presented qualifying conditions for FMLA leave to them as early as December 14, 2011.

45.    Similarly, on *March 17th, 2012 10:57am* – Text conversation:

Sarah Novo - "Hey, we are meeting the adjuster at the storage at 1130, then doing walk-through of the new place...hoping for some family time after that. Would you mind if I missed the parade today?"

Angelique Ashby - "*I don't mind you missing the parade* [St. Patrick's Day parade on Saturday (not a normal employee work day) in Old Sacramento, a political event for Ashby] I would rather you do whatever you need to do to get your stuff in order.  I hope you are finding some solutions and

figuring out ways to stabilize all the upheaval.  *I know you haven't been your yourself and I want you back so do what you need to do to make that possible.*  The parade is not important, getting a home and your sanity are critical to your success in everything else.  Good luck, I'm pulling for you! Hope this weekend is a productive one for you and your family. I'm sure everyone is tired of the chaos.  Hang in there. 1136am

Sarah Novo - "Thank you so much.  Nick and I are making every effort to get through this better and stronger than before. I really appreciate and value your support." 1146am.

41.   On the following Monday at 5:00 p.m, March 19, 2012, Ashby stated to plaintiff that she "…needed someone who is one hundred percent, that you are *not* one hundred percent, and that she [Ashby] felt that plaintiff could not give this effort, that it was best to part ways so that Ashby could find someone who could give one hundred percent; and, she [Ashby] would get back to plaintiff with a Plan "B" City employment circumstance in lieu of plaintiff's present employment position." Ashby never again contacted plaintiff with Plan "B" [as she had promised to do on March 19, 2012].  Plaintiff understood Plan "B" to be a replacement or other employment circumstance with the City, in lieu of plaintiff's employment with Ashby.

42.   Because plaintiff did not hear back from Ashby [as she represented on March 19, 2012, the Plan "B"], on March 26, 2012 plaintiff had hand delivered to Ashby and the City her request for FMLA leave and California Family Rights Act leave to take effect on March 20, 2012 with a return to work date of May 7, 2012. See Exhibit D hereto and incorporated herein as if full set forth.  At this time (March 26, 2012), plaintiff reasonably understood and believed she was a City employee based in part on Ashby's March 19, 2012 statements to plaintiff *and* in part that she had not received any *indicia* from the City to cause her to believe otherwise, *viz*. a final pay check reflecting that plaintiff had been terminated on March 19, 2012 and notification of her rights (COBRA, CalCOBRA & HIPAA [DHCS 9061]) to continued

health care, California Employment Development Department (EDD) unemployment benefits pamphlet, For Your Benefit, DE 2320; and California Unemployment Insurance Code 1089 Notice to Employee as to Change in Relationship form. [2]/

43.   *On the morning of April 2, 2012, plaintiff received an email from the City advising her (within a "pdf attachment"* [back-dated *to March 19, 2012]) for the first time that her employment with the City was terminated on March 19, 2012.* Accompanying this notice of termination contained in the email, was a second pdf attachment (letter, dated March 30,2012) from the City requesting plaintiff to return to City offices and deliver an iPhone 4 provided to her by the City, an employment badge, and her City parking card.  This same "pdf" email communication stated further that plaintiff was not entitled to FMLA leave because plaintiff was terminated from City employment on March 19, 2012.  *Up to the time of filing this complaint, plaintiff has not at anytime received a "severance package" notifying her of rights to continue health care, etc. as required by law.*  On March 30, 2012 plaintiff received her final pay-check [direct deposit] for her employment up through March 19, 2012, accrued vacation pay, and furlough day—compensation that was required by law to be paid on the date of termination [March 30, 2012].

44.   Under FMLA, defendants were legally required to notify plaintiff of her rights to take protected leave under FMLA on December 14, 2011, January 13, 2012, February 3, 2012, February 15, 2012, February 21, 2012, February 22, 2012, March 6, 2012, March 17, 2012, and March 19, 2012.

---

[2]  California Labor Code Section 2802(b) requires employers to provide to employees, upon termination, notification of all continuation, disability extension and conversion coverage options under any employer-sponsored coverage for which the employee may remain eligible after employment terminates.

45.   On August 9, 2012 plaintiff applied for a City position, "Intergovernmental Relations Officer."  On September 21, 2012 the City replied that plaintiff's education and experience did not meet the qualifications for the position; notwithstanding, plaintiff has the experience to perform the job and the City Manager could have appointed plaintiff to the position (even though plaintiff did not meet all of the educational requirements).  Similarly, on September 3, 2012 plaintiff applied for her former position as Code Enforcement Officer, but was told the City was uncertain how it planned to fill the upcoming vacant position—the City never responded further to plaintiff.

46.   As a result of the defendants' conduct, plaintiff has suffered economic damages in an amount to be determined at trial, including back pay, front pay, damages, caused by her termination; and, her current and future medical expenses as a result of the severe impact upon her mental and emotional state.

47.   As a further direct and proximate result of the defendant's conduct, plaintiff has suffered and will continue to suffer from a depressed mood, humiliation, anger, frustration, anxiety, emotional pain, mental anguish, difficulty sleeping, and loss of enjoyment of life and is entitled to an award of compensatory damages. Plaintiff is further entitled to an additional award of liquidated damages equal to the amount of economic damages under 29 U.S.C. § 2617.

48.   Plaintiff is further entitled to attorney fees, reasonable expert fees and costs under 29 U.S.C. §2617.

SECOND CLAIM FOR RELIEF

(Violation of the Family Medical Leave Act, 28 U.S.C. § 2611 *et seq*)

(Defendants Denial of Family Medical Leave Act Benefits to Plaintiff)

49.     Plaintiff re-alleges and incorporates paragraphs 1 through 48.

50.     In October, 2011 plaintiff moved into a newly rented home with her husband and children.  Plaintiff and her family were unaware at the time that the residence was burdened with toxic mold that was injurious to the health of her family and herself.

51.      Plaintiff began working for the defendants in November, 2010.  In early December, 2011 plaintiff and her family began experiencing degradation in their health, the origin of which was not known [the toxic mold] to plaintiff and her family.  As a consequence to this circumstance, plaintiff was required to take time off [cumulative five days] from her employment with defendant to attend and support the health needs of her family that included visits to health care professionals. Plaintiff shared this information and circumstance with defendant.

50.     On March 26, 2012 plaintiff in writing requested defendants to grant her medical leave under FMLA and CFRA

51.     On March 30, 2012 defendants wrongfully denied plaintiff her employment rights and requested medical leave under FMLA and CFRA.

THIRD CLAIM FOR RELIEF

(Violation of the California Family Rights Act, Cal. Gov't Code § 12945.2)

52.     Plaintiff re-alleges and incorporates paragraphs 1 through 51.

53.     The defendant is an "employer" for purposes of the California Family Rights Act ("CFRA") because the defendant employees 25 or more persons in the State of California for each working day during each of 20 or more calendar workweeks in the year in which the leave was taken under § 12945.2.

54.     Plaintiff is an "employee" for purposes of CFRA because she is an employee of a covered employer, was employed longer the 180 days by the defendant, and worked an average of more then 25 hours per week for the defendant under § 12945.2.

55.     Plaintiff suffers from serious health conditions, including but not limited to headaches, nausea, and sinus problems that result in chronic fatigue and pain, as that term is defined by FMLA and CFRA.

56.     Plaintiff sought medical leave so she could recover from, or seek treatment for her own serious health condition.

57.     The defendant denied plaintiff FMLA-CFRA leave and retaliated against plaintiff by terminating her for requesting leave within FMLA-CFRA.  Plaintiff has sought re-employment with defendant, but has been denied re-employment by defendant.

58.     As a result of the defendant's conduct, plaintiff has suffered economic damages in an amount to be determined at trial, including front pay damages, due to her termination and her current and future medical expenses as a result of the severe impact upon her mental and emotional state.

59.     As a further direct and proximate result of the defendant's conduct, plaintiff has suffered and will continue to suffer from a depressed mood, humiliation, anger, frustration, anxiety, emotional pain, mental anguish, difficulty sleeping, and loss of enjoyment of life and is entitled to an award of compensatory damages.

60.     Plaintiff is entitled to bring a civil action for injunctive and equitable relief under FMLA-CFRA.

61.     Plaintiff is further entitled to attorney fees, reasonable expert fees and costs under FMLA-CFRA.

FOURTH CLAIM FOR RELIEF

(Common Law Tort for Wrongful Discharge in Violation of Public Policy)

62.     Plaintiff re-alleges and incorporates paragraphs 1 through 61.

63.     Plaintiff was terminated for exercising her statutorily protected rights to medical leave pursuant to FMLA and CFRA in violation of public policy.

64.     The common law tort for wrongful discharge is recognized by the California courts:  see *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 898 (Cal. 2008) citing *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167.  In *Tameny*, the court stated "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (Id. at p. 170.) See also *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095, in which the court clarified *Tameny* that cause of action must be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions."

65.     Plaintiff's rights under FMLA and CFRA to medical leave and to return to work mirror important public policies and interests in stability of the work and harmony within the communities in which joined.

66.     Plaintiff's right to take medical leave is an important public interest.

67.     Her employment was wrongfully terminated on about March 30, 2012 because she exercised these important public rights.

68.     As a result of the defendant's conduct, plaintiff has suffered economic damages in an amount to be determined at trial, including back pay, front

pay, and general damages, due to her termination and her current and future medical expenses as a result of the severe impact upon her mental and emotional state.

69.     As a further direct and proximate result of the defendant's conduct, plaintiff has suffered and will continue to suffer from a depressed mood, humiliation, anger, frustration, anxiety, emotional pain, mental anguish, difficulty sleeping, and loss of enjoyment of life and is entitled to an award of compensatory damages.

70.     As a result of the defendant's violation of societal interests and unambiguous public policy against the discrimination in denial of plaintiff's FMLA and CFRA rights, plaintiff is entitled to punitive damages against Ashby.

FIFTH CLAIM FOR RELIEF

(Retaliation for Requesting FMLA/CFRA Leave)

71.     Plaintiff re-alleges paragraphs 1 through 70 above.

72.     Defendant's termination of plaintiff and subsequent refusal to reinstate plaintiff to her former employment was because plaintiff requested and sought to exercise her rights to medical leave and return work under FMLA and CFRA.  Defendant's conduct was retaliatory against plaintiff in response to her request to exercise said rights.

73.     As a result of defendant's actions, plaintiff has been injured and is entitled to economic, compensatory, and punitive damages in an amount to be determined at trial.

74.     Plaintiff requested FMLA and CFRA leave on March 26, 2012, in writing by hand delivery.  Defendants retaliated against plaintiff for requesting said leave by terminating plaintiff until April 2, 2012 and thereafter refusing to grant her

employment interviews that she had sought for open positions within the City.

SIXTH CLAIM FOR RELIEF

(Fraud and Deceit)

(Inducing Plaintiff to Work as "Executive Assistant")

75.     Plaintiff re-alleges paragraphs 1 through 74 above.

76.     Ashby's representations made to induce plaintiff into her employ were false:  (a) Ashby's statement was false to plaintiff that her accepting return to her Code Enforcement position *and* then transferring to Ashby's employ would cause a problem for the defendants and plaintiff; (b) Ashby's statement was false that she was appointing plaintiff to the District Director position; (c) Ashby's statement was false that plaintiff's compensation package would provide increases in compensation; and, (d) Ashby's statement was false that the position she was offering plaintiff was a "management position," providing plaintiff a career management opportunity.

77.     Plaintiff relied on these false statements, not knowing them to be false, in accepting Ashby's offer of employment with the City.

78.     The true facts were that (a) plaintiff returning to her former position at Code Enforcement position *and* then transferring to Ashby's employ would *not* have caused a problem for the defendants and plaintiff; (b) Ashby' had no intention of appointing plaintiff to the District Director position; (c) Ashby knew that she was appointing plaintiff to the top compensation step of the Executive Assistant position so plaintiff could not qualify for higher earnings as the Executive Assistant; and (d) the Executive Assistant position was a rank/file employee position—*not* a management position providing plaintiff a career management opportunity.

79.     Plaintiff relied on the [false] statements of Ashby in choosing to accept her offer of employment.  Had plaintiff known the true facts, that Ashby's representations were false, plaintiff would not have accepted Ashby's employment opportunity; instead, plaintiff would have returned to code enforcement [as was her original plan].

80.     When Ashby made these representations, she knew them to be false and made these representations with the intention to deceive and defraud the plaintiff and to induce the plaintiff to act in reliance on these representations in the manner hereinabove alleged or with the expectation that the plaintiff would so act.

81.     The plaintiff, at the time these representations were made by Ashby and at the time the plaintiff took the actions hereinabove alleged, was ignorant of the falsity of the defendant's representations and believed them to be true.  In reliance on these representations, plaintiff was induced to and did accept Ashby's offer of employment.  Had the plaintiff known the actual facts plaintiff would not have taken such action.  The plaintiff's reliance on the defendant's representations was justified because Ashby was a superior position of knowledge and power over plaintiff at the time.

82.     As a proximate result of the fraudulent conduct of Ashby as hereinabove alleged, plaintiff was induced to and did expend many 60 to 70 hours a week of work for Ashby without just compensation.  Further, Ashby's conduct caused the plaintiff to lose her right of reinstatement to her former position as a code enforcement officer.  Plaintiff has suffered further damages and suffered the loss of all of her vested rights and benefits provided to her as a Code Enforcement Officer in the City's employ.

83.     The aforementioned conduct of Ashby was an intentional misrepresentation, a deceit, or concealments of material facts known to Ashby with the intention on her part to thereby deprive the plaintiff of her legal rights and benefits and otherwise causing injury to the plaintiff, and Ashby's acts as hereinabove set forth are despicable conduct that subjects the plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

### PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

1.      A declaration that the defendant has violated plaintiff's statutorily protected rights and an order requiring the defendant to correct this deficiency;

2.      Economic damages for any loss of income, back pay, front pay, medical expenses, and health and retirement benefits for defendants' violation of plaintiff's rights as set forth in each cause of action herein;

3.      Compensatory damages in an amount to be determined at trial, but in an amount no less than $300,000;

4.      Liquidated damages in an amount to be determined at trial;

5.      Plaintiff's attorney fees and expert fees;

6.      For exemplary and punitive damages against Ashby;

7.      Costs and disbursements incurred herein; and,

8.          For such other and further relief as provided by law.


 March 15, 2013                          HIBBITT, TARBELL & KOEHLER



                                   _____/s/_____
                                   Robert F. Koehler, Jr.
                                   Attorney for Plaintiff



                                   VERIFICATION

I, Sarah R. Novo, am the plaintiff in this action.  I have read the foregoing complaint

    and know the contents thereof.  The same is true of my own knowledge, except as

    to those matters that are therein stated on information and belief, and as to those

    matters I believe those to be true.

I declare under penalty of perjury under the laws of the State of California that the

    foregoing is true and correct and that this verification is executed in Sacramento

    California on March 15, 2013



                                   _____/s/_____
                                   SARAH R. NOVO



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

**EMPLOYMENT - RIGHT TO SUE**

| COMPLAINANT NAME: | TELEPHONE NUMBER: |
|---|---|
| Sarah Novo | (916) 676-5141 |

| ADDRESS: | CITY/STATE/ZIP: |
|---|---|
| 9351 Wellington Way | Granite Bay, CA. 95746 |

NAMED IS THE EMPLOYER OR PERSON(S) WHO DISCRIMINATED, HARASSED OR RETALIATED AGAINST ME:

| RESPONDENT NAME: | AGENT FOR SERVICE NAME: | TELEPHONE NUMBER: |
|---|---|---|
| City of Sacramento | City Clerk | (916) 808-7200 |

| ADDRESS (AGENT FOR SERVICE): | CITY/STATE/ZIP: |
|---|---|
| 915 I St. | Sacramento, CA. 95814 |

| NO. OF EMPLOYEES: | DATE MOST RECENT DISCRIMINATION TOOK PLACE: | TYPE OF EMPLOYER: |
|---|---|---|
| 3791.54 | April 2nd, 2012 | Government |

CO-RESPONDENT(S):

| NAME | ADDRESS | PHONE NUMBER |
|---|---|---|
| Angelique Ashby | 915 I St., 5th floor Sacramento, CA. 95814 | (916) 808-7001 |

Do you have an attorney who has agreed to represent you and this matter in court?   ■Yes   ☐ No

If yes, please provide the attorney's contact information:

Attorney Name: _Robert Koehler_

Attorney Firm Name: _Hibbett Tarbell & Koehler_

Attorney Street Address, City, State and Zip Code: _331 J St. Suite 200 Sacramento, CA._



# DEMOGRAPHIC INFORMATION
### THIS INFORMATION IS OPTIONAL AND IS ONLY USED FOR STATISTICAL PURPOSES.

GENDER:
- ☐ Male
- ☒ Female
- ☐ Other

MARITAL STATUS:
- ☐ Single
- ☒ Married
- ☐ Divorced
- ☐ Cohabitation

RACE:
- ☐ Asian
- ☐ American Indian or Alaskan Native
- ☐ Black or African American
- ☐ Native Hawaiian or Other Pacific Islander
- ☒ White

NATIONAL ORIGIN:

- ☐ Afghani National Origin
- ☒ American [U.S.A] National Origin
- ☐ Asian Indian National Origin
- ☐ Bangladeshi National Origin
- ☐ Cambodian National Origin
- ☐ Canadian National Origin
- ☐ Chinese National Origin
- ☐ Cuban National Origin
- ☐ Dominican National Origin
- ☐ Egyptian National Origin
- ☐ English National Origin
- ☐ Ethiopian National Origin
- ☐ Fijian National Origin
- ☐ Filipino National Origin
- ☐ German National Origin
- ☐ Ghanaian National Origin
- ☐ Guamanian National Origin
- ☐ Haitian National Origin
- ☐ Hawaiian National Origin
- ☐ Hmong National Origin
- ☐ Indonesian National Origin
- ☐ Iranian National Origin
- ☐ Iraqi National Origin
- ☐ Irish National Origin
- ☐ Italian National Origin

- ☐ Jamaican National Origin
- ☐ Japanese National Origin
- ☐ Korean National Origin
- ☐ Laotian National Origin
- ☐ Lebanese National Origin
- ☐ Malaysian National Origin
- ☐ Mexican National Origin
- ☐ Nigerian National Origin
- ☐ Other African National Origin
- ☐ Other Asian National Origin
- ☐ Other Caribbean National Origin
- ☐ Other European National Origin
- ☐ Other Hispanic/Latino National Origin
- ☐ Other Middle Eastern National
- ☐ Other National Origin
- ☐ Pakistani National Origin
- ☐ Puerto Rican National Origin
- ☐ Salvadoran National Origin
- ☐ Samoan National Origin
- ☐ Sri Lankan National Origin
- ☐ Syrian National Origin
- ☐ Taiwanese National Origin
- ☐ Thai National Origin
- ☐ Tongan National Origin
- ☐ Vietnamese National Origin

# QUESTIONNAIRE

IF YOU ARE FILING AGAINST BOTH A COMPANY AND AN INDIVIDUAL(S), PLEASE COMPLETE ONE COMPLAINT FORM NAMING ALL RESPONDENTS.

Date the most recent or continuing discrimination take place? *April 2nd, 2012*

I ALLEGE THAT I EXPERIENCED: ▣ Discrimination   ☐ Harassment   ▣ Retaliation

BECAUSE OF MY ACTUAL OR PERCIEVED:
☐ Age- 40 and over
☐ Ancestry
☐ Association with a member of a protected class
☐ Color
☐ Disability
☐ Engagement in Protected Activity
▣ Family, Care or Medical Leave
☐ Genetic Information or Characteristics
☐ Marital Status
▣ Medical Condition- Including Cancer
☐ National Origin- Including language use restrictions
☐ Race
☐ Religion
☐ Sex- Gender
☐ Sex- Gender Identity or Gender Expression
☐ Sex- Pregnancy
☐ Sexual Orientation
☐ Other (specify) _____

AS A RESULT, I WAS:
☐ Asked impermissible, non-job related questions
☐ Demoted
☐ Denied a good faith interactive process
▣ Denied a work environment free of discrimination and/or retaliation
☐ Denied continuation of employer-paid health care coverage while on pregnancy disability leave
▣ Denied employment
▣ Denied equal pay
▣ Denied family care or medical leave
☐ Denied pregnancy leave
☐ Denied promotion
▣ Denied reasonable accommodation
▣ Denied reinstatement
☐ Denied the right to wear pants
☐ Forced to quit
☐ Laid off
▣ Terminated
☐ Tested for genetic characteristics
☐ Other (specify) _____

RECEIVED

MAR 1 1 2013

FAIR EMPLOYMENT & HOUSING
SACTO DIST OFC. - EMPLOYMENT UNIT

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right to sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.  I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Immediate Right to Sue."  By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters. I believe them to be true.

Signature of Complainant or Complainant's Legal Representative: *[signature]*   Date: March 10, 2013

Printed Name: Sarah Novo



**EMPLOYMENT APPLICATION**
**CITY EMPLOYMENT OFFICE**
915 I STREET, HISTORIC CITY HALL, PLAZA LEVEL, SACRAMENTO, CA 95814
24-HOUR JOB LINE: (916) 808-8568 / TELEPHONE: (916) 808-5726
*An Equal Opportunity Employer*

**INSTRUCTIONS:** This application is part of the examination process. It must be completely filled out and signed to be accepted. Late and/or incomplete applications will be rejected; omitted information cannot be considered or assumed.

**PLEASE PRINT OR TYPE**

| | FOR HR OFFICE USE ONLY |
|---|---|
| SOCIAL SECURITY NUMBER ___ ___ ___ ___ | ☐ APPLICATION ACCEPTED |
| JOB TITLE ~~Director of Constituent Affairs~~ *EXECUTIVE ASSISTANT* Exam # _____ | ☐ APPLICATION REJECTED |
| | ☐ EDUCATION |
| | ☐ EXPERIENCE |
| NAME ____Novo_____ ____Sarah____ ____R.____ | ☐ NMQ |
|      Last         First     Middle Initial | ☐ LATE |
| | ☐ OTHER |

MAILING ADDRESS ____506_____ Gettysburg Ct._____
           Street #     Street Name           Apartment #

___Roseville_____ ____CA____ ____95661____
     City              State        Zip Code

HOME PHONE 916 _676-5141_____ OTHER PHONE ( )_____

**ALL APPLICANTS, INCLUDING CITY EMPLOYEES, MUST IMMEDIATELY NOTIFY THE CITY EMPLOYMENT OFFICE AT THE ABOVE ADDRESS OF ANY ADDRESS OR PHONE CHANGES.**

**CONVICTIONS:** Conviction of a misdemeanor crime is not necessarily a bar to City employment. Each case is considered separately based on job requirements. Some classifications may require a fingerprinting check as verification. However, failure to list convictions, except as provided below may result in termination from the examination process or employment. You may omit a) traffic violations (Driving Under the Influence convictions must be reported); b) any conviction committed prior to your 18th birthday that was finally adjudicated in Juvenile Court or under a youth offender law; c) any incident sealed under Welfare and Institutions Code §781 or Penal Code §1203.45; d) any conviction more than two years old as specified in Labor Code §432.7 and e) any conviction that has been expunged or otherwise removed from the record. FAILURE TO LIST CONVICTIONS MAY RESULT IN TERMINATION FROM THE EXAMINATION PROCESS AND/OR EMPLOYMENT.

1. Have you ever been convicted by a court of a misdemeanor?   ☒ NO    ☐ YES

2. Have you ever been convicted by a court of a felony?   ☒ NO    ☐ YES

3. If "YES" to "1" or "2", state WHAT conviction, WHEN, WHERE, AND DISPOSITION OF CASE(S): _____

_____

**EDUCATION AND TRAINING:** Submit verification of your college education such as copies of transcripts or diplomas.

1. High School Graduate or Passed GED? ☐ NO  ☒ YES  Where? _Colfax High_____

2.

| NAME AND LOCATION OF COLLEGE, UNIVERSITY, BUSINESS, CORRESPONDENCE, TRADE, OR SERVICE SCHOOL(S) | MAJOR COURSE OF STUDY | UNITS COMPLETED | | DIPLOMA, CERTIFICATE, OR DEGREE RECEIVED; # OF HOURS OF TRAINING PROGRAM OR COURSE(S) REQUIRED BY JOB ANNOUCEMENT |
|---|---|---|---|---|
| | | SEMESTER UNITS | QUARTER UNITS | |
| University of Phoenix | Management | 20 | | |
| American River College | General Ed | 60 | | |
| Santa Rosa Jr. College | Enforcement | | | |

3. List current certificates of professional competence, licenses, membership in professional associations.

Card holding member of FBI Infragard program, CPR/First Aid/AED instructor, PC 832 Arrest,

search, siezure, firearms and baton. Investigative and report training, Officer academy.

Ex. A

QUALIFYING EMPLOYMENT HISTORY: List your relevant paid and unpaid work experience that relates to the qualifications of the position. Begin with your most recent experience. List all jobs separately. The experience you list will be used to determine if you meet the minimum qualifications as stated on the job announcement. Applications that do not list related job experience will be considered incomplete and will be rejected; omitted information cannot be considered or assumed. A resume will not substitute for the information required in this section. Your application will be rejected if you refer to attachments instead of completing the following boxes. If you wish to submit more detailed information, or if you have additional experience, you may attach additional sheet(s).

Note: Qualifying experience is based on 40 hours per week (pro-rated if less than 40 hours/week).

| FROM: MO. 8 DAY YR. 2006 | TITLE: Code Enforcement Officer | PRESENT OR MOST RECENT EMPLOYER: |
|---|---|---|
| TO: MO. 7 DAY 15 YR. 2010 | DUTIES: Explain and enforce | City of Sacramento |
| TOTAL TIME: 3 YRS, 11 MOS. | codes to improve the quality | ADDRESS: 915 I ST. |
| HOURS PER WEEK: 40 + | of life for the residents of | Sacramento, CA. |
| # PEOPLE SUPERVISED: | the City of Sacramento. | PHONE: |
| MONTHLY SALARY: 3,400 | Provide punctual response, | SUPERVISOR: Dennis Kubo |
| REASON FOR LEAVING: Budgetary lay off | exceptional service, follow up and community reports. | If you are under serious consideration for appointment by the City, may we contact? Yes ☒ No ☐ |
| FROM: MO. 1 DAY YR. 2004 | TITLE: City University Instructor | FORMER EMPLOYER: |
| TO: MO. 7 DAY 15 YR. 2010 | DUTIES: Train employees of the | City of Sacramento |
| TOTAL TIME: _____ YRS. _____ MOS. | City of Sacramento on a | ADDRESS: 300 Richards Bvd. |
| HOURS PER WEEK: 1.5 | quarterly basis in the | Sacramento, CA. |
| # PEOPLE SUPERVISED: 21 | practice of CPR, AED and | PHONE: |
| MONTHLY SALARY: 3,400 | first aid. Provide training in | SUPERVISOR: Kristin Mortenson |
| REASON FOR LEAVING: Budgetary Lay off | technique, recognition and safety practices. | |
| FROM: MO. 9 DAY YR. 2002 | TITLE: Animal Control Officer | FORMER EMPLOYER: |
| TO: MO. 8 DAY YR. 2006 | DUTIES: Provide education and | City of Sacramento |
| TOTAL TIME: _____ YRS. _____ MOS. | media communication regarding | ADDRESS: 2127 Front St. |
| HOURS PER WEEK: 40 + | animal related events. Train | Sacramento, CA. |
| # PEOPLE SUPERVISED: 3 - trainees | in and perform investigations | PHONE: 916) 808-7387 |
| MONTHLY SALARY: 2,800 | and enforce animal related | SUPERVISOR: Pete Alarcon |
| REASON FOR LEAVING: hours, income | law. Provide necessary court testimony. | |
| FROM: MO. 2 DAY YR. 2001 | TITLE: Supervising Counselor | FORMER EMPLOYER: |
| TO: MO. 9 DAY YR. 2002 | DUTIES: Supuervision and | TLK |
| TOTAL TIME: _____ YRS. _____ MOS. | counseling of at risk youth | ADDRESS: 8608 Madison Av. |
| HOURS PER WEEK: 40 | in a treatment facility for | Orangevale, CA. |
| # PEOPLE SUPERVISED: 8 | minors with emotional and | PHONE: |
| MONTHLY SALARY: 2,500 | behavioral challenges. | SUPERVISOR: Jason Smith |
| REASON FOR LEAVING: More progressive place of employment, benefits. | | |

**QUALIFYING EMPLOYMENT HISTORY:** List your current job and other work experience that relates to the qualifications of the position. Begin with your most recent experience. List all jobs separately. The experience you list will be used to determine if you meet the minimum qualifications as stated on the job announcement. Applications that do not list related job experience will be considered incomplete and will be rejected; omitted information cannot be considered or assumed! A resume will not substitute for the information required in this section. Your application will be rejected if you refer to attachments instead of completing the following boxes. If you wish to submit more detailed information, or if you have additional experience, you may attach additional sheet(s).

Note: Qualifying experience is based on 40 hours per week (pro-rated if less than 40 hours/week).

| FROM: MO. 1 DAY YR. 2003 | TITLE: Office Manager | PRESENT OR MOST RECENT EMPLOYER: |
|---|---|---|
| TO: MO.pres DAY YR. | DUTIES: Oversee day to day | A-1 Property Management |
| TOTAL TIME: 6 YRS. 9 MOS. | operations. Responsible for | ADDRESS: 6616 Madison Av. St. 6 |
| HOURS PER WEEK: 20 | conducting thorough analysis | Carmichael, CA. |
| # PEOPLE SUPERVISED: 2 | to devise successful market | PHONE: 916) 966-8000 |
| MONTHLY SALARY: | strategies. | SUPERVISOR: Debra Novo |
| REASON FOR LEAVING: Present | | If you are under serious consideration for appointment by the City, may we contact? Yes ☐ No ☐ |
| FROM: MO. DAY YR. | TITLE: | FORMER EMPLOYER: |
| TO: MO. DAY YR. | DUTIES: | |
| TOTAL TIME: _____ YRS. _____ MOS. | | ADDRESS: |
| HOURS PER WEEK: | | |
| # PEOPLE SUPERVISED: | | PHONE: |
| MONTHLY SALARY: | | SUPERVISOR: |
| REASON FOR LEAVING: | | |
| FROM: MO. DAY YR. | TITLE: | FORMER EMPLOYER: |
| TO: MO. DAY YR. | DUTIES: | |
| TOTAL TIME: _____ YRS. _____ MOS. | | ADDRESS: |
| HOURS PER WEEK: | | |
| # PEOPLE SUPERVISED: | | PHONE: |
| MONTHLY SALARY: | | SUPERVISOR: |
| REASON FOR LEAVING: | | |
| FROM: MO. DAY YR. | TITLE: | FORMER EMPLOYER: |
| TO: MO. DAY YR. | DUTIES: | |
| TOTAL TIME: _____ YRS. _____ MOS. | | ADDRESS: |
| HOURS PER WEEK: | | |
| # PEOPLE SUPERVISED: | | PHONE: |
| MONTHLY SALARY: | | SUPERVISOR: |
| REASON FOR LEAVING: | | |

NAME: _____ Novo _____ Sarah _____ R. _____   SOCIAL SECURITY # _____
             Last         First      Middle Initial

JOB TITLE: __Director of Constituent Affairs__   EXAMINATION #: _____

---

**DRIVER LICENSE:**   ☒ CALIFORNIA   ☐ OTHER: _____   DR. LICENSE # _____

                CLASS __C__   EXPIRES _2-19-13_

---

**VETERAN'S PREFERENCE:** Are you requesting Veteran's Preference?   ☐ YES ☒ NO

To qualify for Veteran's Preference, a copy of your DD214 **must be submitted with this application.** There are several criteria you must meet before qualifying for this preference. Please ask for the **VETERAN'S PREFERENCE REGULATIONS** sheet.

Active Duty:   From _____ to _____

---

**OTHER INFORMATION:**

1. Will you require reasonable accommodation in the testing process?   ☐ YES ☒ NO

   If "Yes", what accommodations will you need? Attach documentation. _____

2. Are you currently employed by the City of Sacramento?   ☐ YES ☒ NO

   If "Yes", what department? _____

3. If "NO", have you ever been employed by the City of Sacramento?   ☒ YES ☐ NO

   If "Yes", state what department? Date you left? __Animal Care, Code Enforcement. 7/15/2010__

4. Please list other name(s) used: __Sarah Ricking__

5. Please check the type(s) of work you will accept:   ☐ Part-Time   ☒ Full-Time   ☐ Temporary (12 months maximum)

---

**EMPLOYMENT QUESTIONNAIRE**

**APPLICANT:** This completed section is confidential and will be detached from your application. This information is voluntary and is gathered in accordance with State and Federal laws for the purpose of evaluating the effectiveness of our equal opportunity and recruitment efforts.

**CHECK ONE:**   ☐ Male ☒ Female

PLEASE CHECK ONLY ONE BOX FOR THE RACIAL/ETHNIC CATEGORY WITH WHICH YOU MOST CLOSELY IDENTIFY WITH. (SEE BELOW FOR THE ETHNIC DEFINITIONS)

☒ WHITE — (Not Hispanic Origin) All persons having origins in any of the original peoples of Europe, North Africa, or the Middle East.

☐ BLACK — (Not Hispanic Origin) All persons having origins in any of the Black racial groups of Africa.

☐ HISPANIC — All persons of Mexican, Puerto Rican, Cuban, or any other Spanish Hispanic (does not include persons of Portuguese or Brazilian origin or persons who acquire a Spanish surname.)

☐ ASIAN or PACIFIC ISLANDER — All persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent, or the Pacific Islands (excluding the Philippine Islands). This area includes for example, China, Japan, Korea, and Samoa.

☐ AMERICAN INDIAN or ALASKAN NATIVE — All persons having origins in any of the original peoples of North America, and who maintain cultural identifications through tribal affiliation or community recognition. PLEASE IDENTIFY YOUR TRIBAL AFFILIATION: _____

☐ FILIPINO — All persons having origins in the Philippine Islands.

– CONTINUED ON THE NEXT PAGE –

I CERTIFY that I am applying for __Director of Constituent Affairs__, Examination # _____
_Job Title_

I CERTIFY that all statements in this application are true and complete. I agree and understand that any misstatements or omissions of material facts herein will cause forfeiture on my part of all rights to employment by the City of Sacramento. I understand that if I do not meet the announced requirements, I will be eliminated from the examination process, and that applications must be received by the City of Sacramento Employment Office, Historic City Hall, 915 I Street, Plaza Level, Sacramento, CA 95814, by 5:00 p.m. on the final filing date specified on the job announcement. I hereby authorize the City to verify the accuracy of the information I have provided on this application.

## AUTHORIZATION TO RELEASE REMPLOYMENT RECORDS AND OTHER INFORMATION

I authorize any duly accredited representative of the City of Sacramento to obtain any information relating to my activities from prior and current employers and others. This information may include, but not limited to, achievement, performance, attendance, personal history, and disciplinary information. I direct prior and current employers to release such information upon request to the duly accredited representative of the City of Sacramento regardless of any agreement I may have had with you previously to the contrary. I release any individual, including records custodians, from all liability for damages that may result to me on account of compliance or any attempts to comply with this authorization.

SIGNATURE: _____     DATE: _Nov. 5th 2010_
(Required for application to be complete)

**THIS APPLICATION AND ALL ATTACHMENTS ARE CONSIDERED PROPERTY OF THE CITY OF SACRAMENTO EMPLOYMENT OFFICE. PHOTOCOPIES WILL NOT BE FURNISHED. PLEASE ATTACH COPIES OF YOUR ORIGINAL DOCUMENTS.**

## EMPLOYMENT QUESTIONNAIRE:

I first learned of this job opening through (check one only):

☐    A Friend or Relative

☐    The City's Employment Office/or Job Line

☐    Contact with a City Department/Employee: _____
                                                    (Specify City Department/Employee)

☐    An Organization or Group: _____
                                        (Specify Organization or Group)

☐    An Advertisement : _____
                          (Specify Newspaper, Publication, TV or Radio Station)

☐    Job Fair or Contact with a City Recruiter: _____
                                                    (Specify Which Job Fair)

☐    Internet _____

☐    Other Means (Specify) _____

APPLICATIONS MUST BE RECEIVED BY 5:00 P.M. OF THE FINAL FILING DATE SPECIFIED ON THE JOB ANNOUNCEMENT

POSTMARKS ARE NOT ACCEPTED

CITY OF SACRAMENTO
PERSONNEL ACTION REQUEST

## Part A - PERSONNEL ACTION / DEPARTMENT CONTACT

| 1. Personnel Action (One personnel action per PAR Form) | 2. Personnel Action Reason | 3. Effective Date |
|---|---|---|
| Re Hire (Career) | Rehire | 11/22/2010 |

4. PAR Processor (Name, Title, Signature, Date)

Lisa Serna-Mayorga, Council Ops Mgr     Date:11/16/10

5. Department Authorization (Name, Title, Signature, Date)

Lisa Serna-Mayorga, Council Ops Mg     Date:11/16/10

## Part B - EMPLOYEE INFORMATION

| 1. Name (Last, First, MI) | 2. Employee ID (SSN for New Hire) |
|---|---|
| Novo, Sarah R. | ~~XXX-XX-XXXX~~ /4487 |

### 3. Employment Status

☒ Regular (Career/Mgt)     Probation End Date:

☐ Temp (NonCareer/LTerm)     Temp End Date:

| 5. Hours | 6. Benefits |
|---|---|
| ☒ Full-Time  ☐ Part-Time  Hours( ) | ☐ Not Qualified |
| Pay Group: | ☒ Qualified |

### 4. Incentives / Allowance

| Rate Code | Amount or Percentage | Effective Date | Expiration Date | Add | Del |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Part C - POSITION INFORMATION

CURRENT: 1. Position Title

Executive Assistant

| 2. Department/Division | 3. Department ID |
|---|---|
| Mayor/Council Office | 1001011 |

| 4. Location Code | 5. Position Number | 6. Job Code | 7. Step / Hourly |
|---|---|---|---|
| 100500 | 22602 | 10813 | 30.97 |

NEW: 8. Position Title

| 9. Department/Division | 10. Department ID |
|---|---|
| | |

| 11. Location Code | 12. Position Number | 13. Job Code | 14. Step / Hourly |
|---|---|---|---|
| | | | |

## Part D - REQUISITION

### 1. Fill Position By:

☐ Eligible List

☐ Transfer List  ☐ 1 Week  ☐ 2 Week

☐ Other:

| 3. Req Num: | 4. Medical Cleared: |
|---|---|
| HR USE | HR USE |

5. Additional Position Numbers:

### 2. Person Whom Candidates Contact

Name:

Phone Number:

Address:

## Part E - REMARKS

ADDRESS:
506 Gettysburg Court
Roseville, CA 95661
PHONE: (916) 676-5141
DOB: 2/19/81

## Part F - HR USE: Review and Approvals

| Division/Function | Initials/Signature | Date | Division/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A) EAC | AT | 11-16-10 | C) | | |
| B) | | | D) | | |

PAR Form (ver. 07/08)



March 26, 2012

Honorable Angelique Ashby
Councilwoman, District One
City of Sacramento
915 I Street, Sacramento, CA  95814

                    re:  Employment Status; FMLA Request for Leave

Dear Hon. Ashby:

      I want to thank you for taking the time on the evening of March 19, 2012 to review my employment status.  You have been very supportive of my temporary exigencies involving my needs to care for the serious health problems beset my family consequent to documented toxic mold infestation in our former residence—to which we were forced to evacuate under emergency health conditions.

      After giving our meeting through review, and taking into account your sound advice (and mutual benefit of the needs of the City of Sacramento and my family), I have elected to request leave from my present position pursuant to The Family and Medical Leave Act of 1993 (FMLA): the care of a spouse, son, daughter, or parent with a serious medical condition.  29 U.S.C. §2612(a)(1)(C).  The beginning effective date of my leave is March 20, 2012; I will return to work on May 7, 2012.  I anticipate the return date to be firm, absent some unforeseen extraordinary circumstance of health issues in my family.

      In conjunction with this request, I am also requesting leave under California Family Rights Act (CFRA, Cal. Gov't. Code § 12945.2).  I will make an appointment with our Human Resources Department for guidance on how these simultaneous requests should be process through the Department to ensure the continuation of employment benefits.

      Again, I want to thank you being supportive of my family's needs as you reflected in your text message of March 17, 2012 at 10:57 a.m.:

      SN – "Hey, we are meeting the adjuster at the storage at 1130, then doing a walk-through of the new place.  Hoping for some family time after that.  Would you mind if I missed the parade today?"

      AA – "I don't mind you missing the parade I would rather you do whatever you need to do to get your stuff in order.  I hope you are finding some solutions and figuring out ways to stabilize all the upheaval.  I know you haven't been yourself and I want you back so do what you need to do to make that possible.  The parade is not important, getting a home and your sanity are critical to your success in everything else.  Good luck, I'm pulling for you!  Hope this weekend is a productive one for you and your family.  I'm sure everyone is tired of the chaos.  Hang in there.  11:36 a.m.

      SN – "Thank you so much.  Nick and I are making every effort to get through this better and stronger than before.  I really appreciate and value your support."  11:46 a.m.



It is the above kind of support that means so much to me and my family, and continues to build a solid employment foundation that inures to the benefit of your office and the City of Sacramento.

Very truly yours,


Sarah Novo,
Director of Constituent Affairs
District One, City of Sacramento


Cc:     Geri Hamby, Human Resources Director
        Lisa Serna, Council Operations Manager