1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

SARAH R. NOVO,

No. 2:13-cv-00521-MCE-AC

12

Plaintiff,

13

v.

**MEMORANDUM AND ORDER**

14

CITY OF SACRAMENTO,
ANGELIQUE ASHBY,

15

16

Defendants.

17

18      Through this lawsuit, Plaintiff Sarah R. Novo ("Plaintiff") alleges that the City of

19  Sacramento and Angelique Ashby (collectively "Defendants") violated Plaintiff's rights

20  under the Family Medical Leave Act ("FMLA") and the California Family Rights Acts

21  ("CFRA") and committed fraud.  Presently before the Court is Defendants' Motion for

22  Partial Summary Judgment (ECF No. 31), which seeks summary judgment on all four of

23  plaintiff's FMLA and CFRA claims.[1]  For the reasons that follow, Defendants' Motion for

24  Partial Summary Judgment is DENIED.[2]

25  ///

26

27          [1] Defendants do not seek summary judgment on Plaintiff's fraud claim.

28          [2] Because oral argument would not have been of material assistance, the Court ordered this
matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

2

**BACKGROUND**[3]

3      Plaintiff first started working for the City of Sacramento ("the City") in 2002.  On

4  November 23, 2010, Plaintiff began working as Executive Assistant to Councilmember

5  Angelique Ashby.  In October 2011, Plaintiff and her family moved into a house in

6  Granite Bay, California.  Two months later, Plaintiff and her family began experiencing

7  flu-like symptoms.  Plaintiff first reported this information to Ashby on December 14,

8  2011.  On February 2, 2012, Plaintiff discovered significant mold growth in the house.

9  Days later, an inspector recommended that Plaintiff and her family move after concluding

10  that mold permeated the walls and floors of the house; they did so the following week.

11      On March 19, 2012, Ashby informed Plaintiff that Plaintiff "was no longer needed

12  to be employed within [Ashby's] counsel office . . . ."  Pl.'s Decl. at ¶ 6, ECF No. 48-4.

13  However, Ashby allegedly stated that she "had a 'Plan B' for [Plaintiff's] continued

14  employment with the City," and intimated she would seek to place Plaintiff in another City

15  position.  Id. at ¶¶ 6, 9.  No one requested that Plaintiff return her City employee

16  identification badge, cellular phone, or parking card, and Plaintiff did not receive a

17  separation check or any information regarding continuing health insurance.

18      Ashby never followed up with a "Plan B."  On March 27, 2012, Plaintiff—

19  apparently believing that she was still an employee of the City—delivered a written

20  request to the City for FMLA[4] leave from March 20 to May 7.  On March 30, Plaintiff

21  received her final paycheck, which paid her for employment through March 19.  On

22  April 1, Plaintiff received an email that contained two letters.  The first was a termination

23  letter, backdated to March 19, that explained Plaintiff's employment with the City

24  concluded on March 19.  The second letter explained that the City was denying Plaintiff's

25  FMLA leave request because Plaintiff's employment with the City concluded on

26      _____

[3]  Unless otherwise noted, the parties do not dispute the following facts.

27

[4]  "Since CFRA adopts the language of the FMLA and California state courts have held that the
same standards apply," the remainder of this Order refers only to the FMLA, "with the understanding that
28  CFRA leave is also included."  Xin Liu v. Amway Corp., 347 F.3d 1125, 1132 n.4 (9th Cir. 2003).

1  March 19; that letter also requested that Plaintiff return her City employee identification

2  badge, cellular phone, and parking card.

3

4  **STANDARD**

5

6        The Federal Rules of Civil Procedure provide for summary judgment when "the

7  movant shows that there is no genuine dispute as to any material fact and the movant is

8  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

9  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

10  dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

11        Rule 56 also allows a court to grant summary judgment on part of a claim or

12  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

13  move for summary judgment, identifying each claim or defense—or the part of each

14  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

15  Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

16  motion for partial summary judgment is the same as that which applies to a motion for

17  summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

18  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

19  judgment standard to motion for summary adjudication).

20        In a summary judgment motion, the moving party always bears the initial

21  responsibility of informing the court of the basis for the motion and identifying the

22  portions in the record "which it believes demonstrate the absence of a genuine issue of

23  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

24  responsibility, the burden then shifts to the opposing party to establish that a genuine

25  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

26  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

27  253, 288-89 (1968).

28  ///

1    In attempting to establish the existence or non-existence of a genuine factual

2  dispute, the party must support its assertion by

3        citing to particular parts of materials in the record, including
         depositions, documents, electronically stored information,
4        affidavits[,] or declarations . . . or other materials; or showing
         that the materials cited do not establish the absence or
5        presence of a genuine dispute, or that an adverse party
         cannot produce admissible evidence to support the fact.
6

7  Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in

8  contention is material, i.e., a fact that might affect the outcome of the suit under the

9  governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986);

10 Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355

11 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a

12 material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could

13 return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  In other words,

14 the judge needs to answer the preliminary question before the evidence is left to the jury

15 of "not whether there is literally no evidence, but whether there is any upon which a jury

16 could properly proceed to find a verdict for the party producing it, upon whom the onus of

17 proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson,

18 81 U.S. 442, 448 (1871)).  As the Supreme Court explained, "[w]hen the moving party

19 has carried its burden under Rule [56(a)], its opponent must do more than simply show

20 that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at

21 586.  Therefore, "[w]here the record taken as a whole could not lead a rational trier of

22 fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Id. 87.

23    In resolving a summary judgment motion, the evidence of the opposing party is to

24 be believed, and all reasonable inferences that may be drawn from the facts placed

25 before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

26 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

27 obligation to produce a factual predicate from which the inference may be drawn.

28 ///

4

1 | Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

2 | 810 F.2d 898 (9th Cir. 1987).

3 |

4 | **ANALYSIS**

5 |

6 |          Defendants argue that they are entitled to summary judgment on Plaintiff's FMLA

7 | claims because plaintiff has failed to produce sufficient evidence to support a prima facie

8 | FMLA interference case.  The Ninth Circuit has made clear that:

9 | 
10 | 
11 | 
12 |
> To make out a prima facie case of FMLA interference, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

13 | Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014) (citation and

14 | internal quotation marks omitted).  Defendants contend Plaintiff has not established that

15 | she was entitled to leave under the FMLA or that she provided sufficient notice of her

16 | intent to take leave under the FMLA.  The Court will address both of those arguments in

17 | turn, first assessing whether there was a serious health condition warranting leave under

18 | the FMLA and then whether Plaintiff provided adequate notice of that condition during

19 | her employment so as to trigger her potential entitlement to FMLA benefits.

20 |          **A.    Entitlement to Leave Under the FMLA**

21 |          An employer covered by FMLA must grant leave to eligible employees "[t]o care

22 | for the employee's spouse, son, daughter, or parent with a serious health condition," or if

23 | "a serious health condition [] makes the employee unable to perform the functions of the

24 | employee's job."  29 C.F.R. § 825.112(a)(3)-(4).[5]  Defendants contend that Plaintiff was

25 | not entitled to leave under the FMLA because neither she nor any of her family members

26 | suffered from a "serious health condition."  Plaintiff counters that both she and her

27 | _____

28 |          [5] Although the regulation identifies other instances in which a covered employer must grant FMLA leave to an eligible employee, none are applicable in this case.

1    husband had a serious health condition, which the applicable regulations define as

2    follows:

3              For purposes of FMLA, serious health condition entitling an
               employee to FMLA leave means an illness, injury, impairment
4              or physical or mental condition that involves inpatient care as
               defined in § 825.114 or continuing treatment by a health care
5              provider as defined in § 825.115.

6    29 C.F.R. § 825.113.  "Inpatient care means an overnight stay in a hospital, hospice, or

7    residential medical care facility . . . or any subsequent treatment in connection with such

8    inpatient care."  29 C.F.R. § 825.114.  Plaintiff does not contend that she or her

9    husband's symptoms resulted in an overnight stay in a hospital, hospice, or residential

10   medical care facility; accordingly, she cannot establish a serious health condition by way

11   of "inpatient care."  However, Plaintiff has produced sufficient evidence that her husband

12   underwent "continuing treatment" by a health care provider while she was employed with

13   the City so as trigger her entitlement to FMLA leave.

14         "Continuing treatment" includes:

15             Any period of incapacity or treatment for such incapacity due
               to a chronic serious health condition.  A chronic serious
16             health condition is one which:

17             (1) Requires periodic visits (defined as at least twice a year)
               for treatment by a health care provider, or by a nurse under
18             direct supervision of a health care provider;

19             (2) Continues over an extended period of time (including
               recurring episodes of a single underlying condition); and
20

21             (3) May cause episodic rather than a continuing period of
               incapacity (e.g., asthma, diabetes, epilepsy, etc.).

22   29 C.F.R. § 825.115.  As to "chronic serious health condition," Plaintiff's evidence

23   includes the declaration of Dr. Janette Hope (Hope Decl., ECF No. 48-1) and a

24   March 26, 2012 letter bearing the signature of Dr. Travis A. Miller (Nick Novo Decl., ECF

25   No. 48-2).  Dr. Hope's declaration identifies Plaintiff's husband's specific chronic serious

26   health conditions, including "significant fatigue, shortness of breath, chest tightness,

27   toxic encephalopathy, recurrent upper respiratory infections, cough, chronic rhinitis,

28   myalgia, and depression."  Hope Decl. at ¶ 6.  Dr. Miller's letter indicates that those

1   health conditions required periodic visits for treatment by a health care provider, as it

2   states:

3       Nick Novo has been evaluated in our clinical practice.   He
        was first seen on March 6, 2012.   His last appointment was
4       March 20, 2012.   He will also be seen March 27, 2012.   He is
        undergoing an extensive medical workup for shortness of
5       break, coughing and respiratory distress.

6   Nick Novo Decl., ECF No. 48-2 at 2.   This evidence of periodic visits satisfies the first

7   element of "continuing treatment" set forth in 29 C.F.R. § 825.115.   As to duration (the

8   second element), Dr. Hope's declaration suggests that the ailments "likely began in late

9   2011 and continued or reoccurred in the early part of 2012 . . . ."   Hope Decl. at ¶ 4.

10   Lastly, as to the third and final element of a "chronic serious health condition" by way of

11   continuing treatment, Dr. Hope opined that Plaintiff's husband's condition "would cause

12   [him] episodic periods of incapacity . . . ."   Id. at ¶ 10.   There is also evidence indicating

13   that Plaintiff's husband's chronic serious health conditions did in fact result in

14   incapacitation prior to March 27, 2012:   Plaintiff's husband explained at his deposition

15   that he missed several days of work in early 2012 because he was too ill to work.   ECF

16   No. 31-5 at 46.[6]   Thus, Plaintiff has produced sufficient evidence that her husband

17   required continuing treatment of a chronic serious health condition, and, consequently, a

18   "serious health condition," by the time she requested FMLA benefits on March 27, 2012.

19       Defendants' arguments to the contrary are not compelling.   Defendants contend

20   that Plaintiff's husband did not have a chronic serious health condition because he "did

21   not attend two in-person medical appointments during his wife's employment by the City

22   of Sacramento."   Defs.' Mot. Summ. J., July 28, 2014, ECF No. 31 at 10.   Defendants

23   also argue that a health care provider did not "make the determination that a second visit

24   [was] necessary."   Id. at 10-11.   The Court finds that Dr. Miller's letter, which notes that

25   _____

26       [6]   Defendants note that Plaintiff's husband could not state exactly how many days of work he
    missed.   But a serious health condition by way of a "chronic condition" requires "[a]ny period of incapacity
27   or treatment for such incapacity."   29 C.F.R. § 825.115(c).   Cf. 29 C.F.R. § 825.115(a) (a serious health
    condition by way of "incapacity and treatment" requires, inter alia, "[a] period of incapacity of more than
28   three consecutive, full calendar days").   The deposition testimony is sufficient to establish that there was a
    period of incapacity for purposes of section 825.115(c).

1   Plaintiff's husband had three different appointments at Dr. Miller's clinical practice in

2   March 2012, sufficiently rebuts both of these arguments.  See also Defs. Mot. Summ. J.

3   at 5 (noting that Plaintiff's husband had medical appointments on February 15 and

4   March 6).

5        Defendants also object to Dr. Hope's declaration in its entirety on the grounds that

6   it lacks a proper foundation.  Defs.' Objs. to Pl.'s Evid., Dec. 11, 2014, ECF No. 56.  But

7   Dr. Hope's declaration notes that she is a licensed doctor in California, that she has

8   been practicing medicine since 1995, and that her medical opinion was based on a

9   May 23, 2012 examination of Plaintiff's husband.  Hope Decl. at ¶¶ 1, 4.  Defendants'

10  objection that Dr. Hope's declaration lacks a proper foundation is overruled.[7]

11       Defendants also challenge Dr. Hope's use of "likely" in her statement that

12  Plaintiff's husband's serious medical conditions "likely began in late 2011 and continued

13  or reoccurred in the early part of 2012 . . . ."  Defendants argue that "[e]xpert opinions

14  that are mere possibilities, without more, are insufficient to overcome a motion for

15  summary judgment."  Defs.' Reply to Pl.'s Opp'n, Dec. 11, 2014, ECF No. 56 at 6 (citing

16  Chaney v. Smithkline Beckman Corp., 764 F.2d 527, 529 (8th Cir. 1985).  First, Chaney

17  is distinguishable.  In Chaney, the Eight Circuit found that "[e]xpert medical testimony to

18  the effect that a causal connection between an occurrence and death or injury was

19  merely 'possible' [was] insufficient to take a case to the jury."  764 F.2d at 529.  Here,

20  Dr. Hope's use of "likely" referred to the duration of symptoms—a fact less debatable

21  and more easily verifiable than causal connection between an event and injury.

22  Furthermore, "likely" expresses greater confidence than "possible."  See Black's Law

23  Dictionary (10th ed. 2014) (defining likely as "[a]pparently true or real; probable" and

24  possibility as "[t]he quality, state, or condition of being conceivable in theory or in

25  practice").  Second, Dr. Hope's declaration is not the only evidence of the duration of

26  symptoms.  Defendants' own Statement of Facts notes (1) "[a]t least as early as

27

28       [7] To the extent that Defendants object to other evidence not addressed in this Order, Defendants'
    objections are denied as moot.

1    December 2011, [Plaintiff's] family began to suffer from frequent flu-like symptoms,"

2    (2) Plaintiff's husband reviewed a chest X-ray with a physician on February 15, 2012,

3    and (3) Plaintiff's husband met with another physician in March 2012.  Defs.' Mot.

4    Summ. J. at 4-5.

5        Because there is sufficient evidence that Plaintiff's husband had a serious health

6    condition, Plaintiff was potentially entitled to leave under the FMLA.  Defendants'

7    argument that they are entitled to summary judgment on that issue therefore fails.

8        **B.**     **Notice of Intent to Take Leave**

9        Defendants argue that even if Plaintiff's husband had a serious health condition

10    entitling her to potential FMLA benefits, Plaintiff did not provide sufficient notice of her

11    intent to take FMLA leave during the time she was employed by the City.  Defendants do

12    not dispute that Plaintiff delivered a written request for FMLA leave on March 27, 2012.

13    But Defendants suggest that because Plaintiff's employment with the City ended when

14    Ashby fired Plaintiff on March 19, plaintiff's request was untimely.  Plaintiff, on the other

15    hand, argues that although her employment with Ashby's office concluded on March 19,

16    she was nevertheless employed with the City until March 30.

17        On Defendants' motion for partial summary judgment, the Court must believe

18    Plaintiff's evidence and draw all reasonable inferences in Plaintiff's favor.  Here,

19    Plaintiff's evidence indicates:  (1) when terminating Plaintiff from her office, Ashby stated

20    she "had a 'Plan B' for [Plaintiff's] continued employment with the City"; (2) on March 19,

21    no one requested that Plaintiff return her City employee identification badge, cellular

22    phone, or parking card, and Plaintiff did not receive a separation check or any

23    information regarding continuing health insurance; (3) Plaintiff did not receive her final

24    paycheck until March 30; (4) on April 1, Plaintiff received a termination letter and a letter

25    requesting that Plaintiff return her City employee identification badge, cellular phone,

26    and parking card.   Believing this evidence and drawing all reasonable inferences in

27    Plaintiff's favor, the Court finds there is evidence that Plaintiff's employment with the City

28    ended on March 30.  Because Plaintiff delivered her written request for FMLA leave on

1    March 27, 2012 (i.e., before the termination of her employment with the City), she

2    arguably provided sufficient notice of her intent to take FMLA leave.

3         Thus, Plaintiff has produced sufficient evidence of a prima facie FMLA

4    interference case to withstand summary judgment.  She has identified triable issues both

5    with respect to a qualifying serious health condition and with regard to timely notice of

6    that condition during her employment with the City.  Because Defendants have

7    consequently not demonstrated that they are entitled to judgment as a matter of law on

8    Plaintiff's four FMLA claims, Defendants' Motion for Partial Summary Judgment must be

9    denied.

10

11                                    **CONCLUSION**

12

13        For the reasons stated above, Defendants' Motion for Partial Summary Judgment

14   (ECF No. 31) is DENIED.

15        IT IS SO ORDERED.

16   Dated:  March 20, 2015

17

18

19   _____

20   MORRISON C. ENGLAND, JR., CHIEF JUDGE
     UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27

28